**Akin & Salaman PLLC**
Kayla S. Callahan, Esq.
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
kayla@akinlaws.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X        Civil Action No.
TAKHIYA ROLAND,

                Plaintiff,

                                     **COMPLAINT**

     -against-

AA BELMONT AVE LLC d/b/a FIRST RESPONSE
URGENT CARE, and AHMED (last name currently
unknown),                                                                                          **Jury Trial Demand**

                Defendants.

-----------------------------------------------------------------------X

       Plaintiff TAKHIYA ROLAND ("ROLAND" or "Plaintiff") alleges against the Defendant

AA BELMONT AVE LLC d/b/a FIRST RESPONSE URGENT CARE ("BELMONT") and

Defendant AHMED (last name currently unknown)("AHMED"), (collectively, "Defendants"),

upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. This action arises out of Defendant BELMONT's **discrimination** against Plaintiff on the

   basis of her **gender / sex** as well as Defendant BELMONT's failure to pay Plaintiff, the

   proper and promised **minimum wage** rate for all hours worked.

2. Plaintiff  ROLAND brings this action against the Defendants for claims of gender

   discrimination, hostile work environment, and retaliation pursuant to Title VII of the

   Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), the New York State

Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), as well as for minimum wage pursuant to the Fair Labor Standard Act ("FLSA"), New York State Minimum Wage Act, the Wage Theft Prevention Act, and the New York State Labor Law ("NYLL").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII and Title IX pursuant to 28 U.S.C. § 1331 AND 1343, because those claims arise under the laws of the United States. This Court has supplemental subject matter jurisdiction over Plaintiff's related NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

5. On October 23, 2023, Plaintiff filed a Complaint with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant BELMONT. On June 25, 2024, EEOC issued Plaintiff Notice of Right to Sue.

6. Plaintiff has exhausted administrative remedies, and any and all other prerequisites to the filing of this suit have been met.

## THE PARTIES

**Plaintiff TAKHIYA ROLAND ("ROLAND")**

7. At all times herein relevant, Plaintiff ROLAND resides in Kings County in the State of New York.

8. At all times herein relevant, Plaintiff is a woman and therefore protected from unlawful employment discriminatory practices under the Title VII, NYSHRL, and NYCHRL on the basis of sex/gender.

9. At all times herein relevant, from on or around October 2022, until on or around May 2023, Plaintiff was an employee of Defendant BELMONT under all applicable statutes.

10. At all times herein relevant, from on or around October 2022, until on or around May 2023, Plaintiff was an employee of Defendant AHMED under all applicable statutes.

11. At all times herein relevant, Plaintiff worked for Defendant BELMONT at the premises designated and / or more commonly known as at 76 Belmont Ave, Brooklyn, NY 11212 ("76 Belmont Urgent Care" or "76 Belmont premises").

12. At all times herein relevant, Plaintiff ROLAND was employed by Defendants as a Porter / Janitor / Cleaner.

## Defendant AA BELMONT AVE LLC d/b/a FIRST RESPONSEURGENT CARE ("BELMONT")

13. At all times herein relevant, Defendant BELMONT was and is a domestic limited liability company organized and existing under and by the virtue of the laws of the State of New York, with principal place of business located at 76 Belmont Ave, Brooklyn, NY 11212.

14. At all times herein relevant, Defendant BELMONT was and is duly authorized to conduct business in the State of New York.

15. At all times herein relevant, Defendant BELMONT was and is an "employer" within the meaning of Title VII, NYSHRL, NYCHRL, FLSA, and NYLL.

16. At all times herein relevant, Defendant BELMONT was Plaintiff's employer within all applicable statutes.

17. At all times herein relevant, Defendant BELMONT was and is Ms. Atkier's employer within all applicable statutes.

18. At all times herein relevant, Defendant BELMONT was and is Mr. Saddique's employer within all applicable statutes.

19. At all times herein relevant, Defendant BELMONT operates offices at the premises located at 76 Belmont Ave, Brooklyn, NY 11212.

20. At all times herein relevant, Defendant BELMONT operates an urgent care medical facility at the premises located at 76 Belmont Ave Brooklyn, NY 11212.

21. At all times herein relevant, Defendant BELMONT operates an urgent care medical facility at the premises located at 979 Fulton Street Brooklyn, NY 11238.

22. At all times herein relevant, Defendant BELMONT is a business or enterprise engaged in interstate commerce within the meaning of the FLSA.

23. At all times herein relevant, Defendant BELMONT has an annual gross volume of sales in excess of $500,000.

24. At all times relevant to this action, Defendant BELMONT has been an employer of Plaintiff within the meaning of the FLSA and NYLL.

**Defendant AHMED (last name currently unknown) ("AHMED")**

25. At all times herein relevant, Defendant AHMED, upon information and belief, was and is a resident of State of New York.

26. At all times herein relevant, Defendant AHMED was and is an "employer" within the meaning of Title VII, NYSHRL, NYCHRL, FLSA, and NYLL.

27. At all times herein relevant, Defendant AHMED was Plaintiff's employer within all applicable statutes.

28. At all times herein relevant, Defendant AHMED owns and operates an urgent care medical facility at the premises located at 76 Belmont Ave Brooklyn, NY 11212.

29. At all times herein relevant, Defendant AHMED owns and operates an urgent care medical facility at the premises located at 979 Fulton Street Brooklyn, NY 11238.

30. At all times relevant to this action, Defendant AHMED was and is an owner and/or manager of Defendant BELMONT.

31. At all times relevant to this action, Defendant AHMED was Plaintiff's supervisor and/or manager during her employment with the Defendants.

32. At all times herein relevant, Defendant AHMED possesses or possessed operational control and policy-making authority, an ownership interest, or significant control of Defendant BELMONT.

33. At all times herein relevant, Defendant AHMED exercised control over the employment terms and conditions of the Plaintiff. Defendant AHMED had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of the Plaintiff.

34. At all times herein relevant,, employees could complain to Defendant AHMED directly regarding any of the terms of their employment, and Defendant AHMED would have the authority to effect any changes to the quality and terms of employees' employment. Defendant AHMED exercised functional control over the business and financial operations of Defendant BELMONT.

35. At all times herein relevant, Employees of Defendants could complain to Defendant AHMED directly regarding any of the terms of their employment, and Defendant AHMED would have the authority to effect any changes to the quality and terms of their employment.

36. At all times herein relevant, the acts of Defendant BELMONT in this Complaint were authorized, directed or accomplished by Defendant AHMED individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Defendant BELMONT.

37. At all times herein relevant, Defendant AHMED is personally and jointly and severally liable for the violations of the FLSA and NYLL by Defendant BELMONT and or its agents and employees.

38. At all times herein relevant, Defendant AHMED is personally and jointly and severally liable for the violations of the NYSHRL and NYCHRL by Defendant BELMONT and or its agents and employees.

39. At all times herein relevant, Defendant AHMED is vicariously liable for the violations of the FLSA and NYLL by Defendant BELMONT and or its agents and employees.

40. At all times herein relevant, Defendant AHMED is vicariously liable for the violations of the NYSHRL and NYCHRL by Defendant BELMONT and or its agents and employees.

**Tahmina Atkier ("Ms. Atkier")**

41. At all times herein relevant, Ms. Atkier, upon information and belief, was and is a resident of State of New York.

42. At all times herein relevant, Ms. Atkier was and is an employee of Defendants under all applicable statutes.

43. At all times herein relevant, Ms. Atkier was and is an agent of Defendants under all applicable statutes.

44. At all times relevant to this action, Ms. Atkier served as a supervisor and/or manager at Defendant BELMONT.

45. At all times relevant to this action, Ms. Atkier was Plaintiff's supervisor and/or manager during her employment with the Defendants.

46. At all times herein relevant, Ms. Atkier possesses or possessed operational control and policy-making authority, an ownership interest, or significant control of Defendants.

47. At all times herein relevant, Ms. Atkier exercised control over the employment terms and conditions of the Plaintiff. Ms. Atkier had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of the Plaintiff.

48. At all times, employees could complain to Ms. Atkier directly regarding any of the terms of their employment, and Ms. Atkier would have the authority to effect any changes to the quality and terms of employees' employment. Ms. Atkier exercised functional control over the business and financial operations of Defendants.

49. At all times herein relevant, employees of Defendants could complain to Ms. Atkier directly regarding any of the terms of their employment, and Ms. Atkier would have the authority to effect any changes to the quality and terms of their employment.

50. At all times herein relevant, the acts of Ms. Atkier in this Complaint were authorized, directed or accomplished by Defendant AHMED individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Defendant BELMONT.

**Rizwam Saddique ("Mr. Saddique")**

51. At all times herein relevant, Mr. Saddique, upon information and belief, was and is a resident of State of New York.

52. At all times herein relevant, Mr. Saddique was and is an employee of Defendants under all

applicable statutes.

53. At all times herein relevant, Mr. Saddique was and is an agent of Defendants under all applicable statutes.

54. At all times relevant to this action, **Mr. Saddique** served as a supervisor and/or manager at Defendant BELMONT.

55. At all times relevant to this action, **Mr. Saddique** served as head of payroll and HR for Defendant BELMONT.

56. At all times relevant to this action, **Mr. Saddique** was Plaintiff's supervisor and/or manager during her employment with the Defendants.

57. At all times herein relevant, **Mr. Saddique** possesses or possessed operational control and policy-making authority, an ownership interest, or significant control of Defendants.

58. At all times herein relevant, Mr. Saddique exercised control over the employment terms and conditions of the Plaintiff. Mr. Saddique had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of the Plaintiff.

59. At all times, employees could complain to Mr. Saddique directly regarding any of the terms of their employment, and Mr. Saddique would have the authority to effect any changes to the quality and terms of employees' employment. Mr. Saddique exercised functional control over the business and financial operations of Defendants.

60. At all times herein relevant, employees of Defendants could complain to **Mr. Saddique** directly regarding any of the terms of their employment, and **Mr. Saddique** would have the authority to effect any changes to the quality and terms of their employment.

61. At all times herein relevant, the acts of Mr. Saddique in this Complaint were authorized, directed or accomplished by Defendant AHMED individually, by himself or his agents, officers, employees or representatives, while actively engaged in the management of Defendant BELMONT.

## FACTUAL ALLEGATIONS

62. At all times herein relevant, from approximately in or around October 15, 2022, until May 23, 2023, Plaintiff was employed by Defendants at the premises located at 76 Belmont Ave, Brooklyn NY 11212.

63. At all times herein relevant, the premises located at 76 Belmont Ave, Brooklyn NY 11212 is also known as First Response Urgent Care ("76 Belmont Urgent Care" or "76 Belmont premises").

64. At all times herein relevant, Plaintiff worked for Defendants at the 76 Belmont Urgent Care as a Porter / Janitor / Cleaner.

65. At all times herein relevant, as a Porter / Janitor / Cleaner Plaintiff's duties included but were not limited to cleaning the entire facility (both floors) located at the 76 Belmont premises including sweeping, mopping, cleaning, and restocking the break rooms, exam rooms, bathrooms, and back rooms; sanitizing all surfaces; washing dishes; taking out the trash; cleaning the windows; cleaning all chairs; cleaning all exam beds.

66. At all times herein relevant, for the duration of her employment with Defendants, Plaintiff was a non-exempt employee.

67. At all times herein relevant, Plaintiff was a stellar employee who performs her duties satisfactorily; she was extremely hard working and a determined employee of Defendant BELMONT.

68. At all times during her employment with Defendants, Plaintiff was an employee engaged in commerce or the production of goods or services for commerce on behalf of Defendants.

69. Specifically, while employed by Defendants, Plaintiff used cleaning products and materials manufactured outside the state of New York and transported via interstate commerce to Defendants' medical facility location in New York to clean the medical facility.

70. At all times herein relevant, during her employment with Defendants, Plaintiff was at all times subordinate to and under the direct supervision and control of Defendants as well as Ms. Atkier and Mr. Saddique.

**Wage Violations**

71. Upon information and belief, for approximately the first month of Plaintiff's employment, from mid-October 2022 until mid-November 2022, Plaintiff worked three days per week, three hours a day and was paid $20.00 per hour in cash; more specifically Plaintiff worked Mondays from 10 am to 1 pm and Wednesdays and Fridays from 4 pm to 7 pm.

72. Thereafter, Plaintiff's supervisor, Ms. Atkier, informed client that the owner, Defendant AHMED, needed to change Plaintiff's schedule because Defendant AHMED, wanted the facility to be cleaned more often.

73. Although Plaintiff was told her new schedule was 6 days per week from 10 am until 2pm, she actually worked until 3 or 4 pm..

74. More specifically, from November 12, 2022, until on or around May 23, 2023, Plaintiff actually worked Monday through Saturday (6 days per week), from 10 am until 3 or 4 pm (5-6 hours per day, 30-36 hours per week) and was paid $500.00 every 2 weeks via Zelle (approximately $8.33- $6.94 per hour).

75. At all times herein relevant, from November 12, 2022 until May 23, 2023, Plaintiff was never paid the minimum wage for any hours that she worked.

76. Upon information and belief, as the facility's Cleaner, Plaintiff was responsible for dealing with very hazardous and time-consuming problems like facility plumbing issues and bed bug fumigation within the facility and her workload increased.

77. At all times herein relevant, beginning in or around January of 2023 Plaintiff complained to her supervisor, Ms. Atkier on a regular basis that she was not being paid the minimum wage and that her wages needed to increase.

78. At all times herein relevant, Ms. Atkier consistently ignored or brushed off Plaintiff's complaints by promising they would talk about it but intentionally failing to do so.

79. Upon information and belief, Ms. Atkier never addressed any of Plaintiff's minimum wage complaints.

80. Thereafter, in or around March of 2023, Plaintiff began complaining on a regular basis to the head of pay roll and HR, Mr. Saddique, about Defendants' unfair pay practices and failure to pay Plaintiff the minimum wage.

81. Thereafter in retaliation for her complaints about Defendants' unfair pay practices, Defendant BELMONT began intentionally messing with Plaintiff's pay by frequently paying Plaintiff 5 days date.

82. At the time of her hire, or at any point thereafter, for the duration of Plaintiff's employment with Defendants, Defendants failed to furnish Plaintiff ROLAND with an accurate and complete pay statements with every payment of wages listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the

hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

83. At the time of her hire, or at any point thereafter, for the duration of Plaintiff's employment with Defendants, Defendants failed to furnish Plaintiff ROLAND with a wage notice setting forth her rate of pay, exempt status, wage rate, overtime rate, method of compensation, regular payday, names of her employers (including fictitious names), addresses and phone numbers for her employers' main offices or principal locations, or any allowances taken.

84. At all times herein relevant, Defendants' failure to provide Plaintiff with complete and accurate wage statements as well as a wage notice has harmed Plaintiff monetarily, specifically by denying Plaintiff relevant information she needed to determine whether she was being underpaid and by how much.

85. At all times herein relevant, Defendants' failure deprived Plaintiff of the ability to know how much compensation she was entitled to and led to the underpayment of wages for approximately 28 weeks of work.

86. At all times herein relevant, for the duration of Plaintiff ROLAND's employment with Defendants, Defendants failed to correct their pay practices with respect to Plaintiff ROLAND's and bring them into compliance with federal and New York State law.

87. At all times herein relevant, such a failure on Defendants' part has caused Plaintiff to experience monetary harm.

88. At all times herein relevant, Defendants' compensation scheme is a blatant, willful violation of the FLSA and NYLL.

89. At all times herein relevant, Defendants knowingly and willfully operated their business with a policy of not paying the minimum wage rate that is required by both the FLSA and NYLL to Plaintiff.

90. At all times herein relevant, Defendants' actions and conduct were and are intentional and intended to harm the Plaintiff.

91. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

92. As Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount, which exceeds the jurisdictional limits of all lower Courts.

## Gender Discrimination

93. At all times herein relevant, Defendant BELMONT openly fosters a discriminatory and hostile workplace for its employees by favoring their male employees over their female employees, specifically by choosing to pay Plaintiff (a female Cleaner) significantly less than Jayson (last name currently unknown) ("Jayson") (a male Cleaner).

94. At all times herein relevant, in or around April of 2023, Plaintiff requested 4 days off from work from cleaning the facility.

95. At all times herein relevant, because Plaintiff took time off, her coworker a male named Jayson covered her cleaning shifts.

96. At all times herein relevant, Plaintiff was told that because Jayson was covering her shifts her pay for the following week would be docked $100.00 and that Jayson would be paid the $100.00 to cover her cleaning shifts.

97. Upon information and belief, when Plaintiff returned to work, she discovered that Jayson did not fully cover her shifts and that he worked only two days, one hour each, and was paid $100.00.00 total ($50.00 per hour).

98. As such, Plaintiff was shocked and on or around Mary 2, 2023 Plaintiff complained via text to Ms. Atkier about the blatant discrimination.

99. Thereafter, Plaintiff continued to complain to Ms. Atkier and Mr. Saddique about Defendant BELMONT's unfair pay practices and increasing her pay.

100.    At all times herein relevant, both Ms. Atkier and Mr. Saddique consistently made excuses and claimed that they could only consider increasing Plaintiff's pay if and when Jayson transferred to Defendant BELMONT's other urgent care located in Park Slope.

**Retaliation**

101.    Upon information and belief, on around the end of May 22, 2023, Plaintiff's child got sick, and she asked Jayson to cover her for the day, but Jayson told Plaintiff there would be no reason for her to return to work the next day because Ms. Atkier and Mr. Saddique said she was fired.

102.    As such, when Plaintiff returned to work on May 23, 2023, she discovered that Defendants hired another Cleaner to replace Plaintiff and her supervisor Ms. Atkier refused to speak with her on the matter.

103.    As such on or around May 23, 2023, Plaintiff was forced to accept her termination.

104.     On or around October 23, 2023, Plaintiff filed a charge of discrimination with the EEOC.

105.     At all times herein relevant, in further retaliation for her complaints regarding Defendants' unlawful pay practices and gender discrimination as well as for filing a charge of discrimination with the EEOC, Defendants retaliatorily denied her medical care at the facility located the 76 Belmont premises.

106.     At all times herein relevant, on or around May 8, 2024, Plaintiff began experiencing symptoms and complications related to her diabetes and sought treatment at the urgent care facility located at the 76 Belmont premises.

107.     At all times herein relevant, when Plaintiff arrived at the medical facility she checked in and was taken to a patient exam room where she waited to be seen by her doctor, Dr. Ann Lee ("Dr. Lee").

108.     Upon information and belief, Dr. Lee briefly came into the exam room to speak with Plaintiff about her symptoms but then received a phone call which caused her to excuse herself from the room without finishing her exam of Plaintiff.

109.     Upon information and belief, Plaintiff was left in the exam room for approximately 90 minutes before, Ms. Atkier came in the room and informed Plaintiff that Defendant BELMONT would be denying her care; Ms. Atkier further stated that she spoke with the owner, Defendant AHMED, who directed Ms. Atkier to tell Plaintiff and her family members were no longer allowed to seek medical treatment from their facilities because "You are suing us."

110.     As a result of the Defendants' discriminatory and retaliatory actions, Plaintiff sustained lost wages.

**111.** As a result of the Defendants' discriminatory and retaliatory actions, Plaintiff has suffered and continues to suffer from severe emotional distress.

### FIRST CAUSE OF ACTION
### FLSA – Unpaid Minimum Wages
### (As to all Defendants)

112. Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

113. By failing to pay Plaintiff at least the minimum wage for all hours worked, Defendants have violated and continued to violate the FLS, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. §§206 and 215 (a)(2).

114. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

115. Defendants' failure to pay at least the minimum wage for all hours worked caused Plaintiff to suffer loss wages and interest thereon.

116. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

117. Defendants' violations of the FLSA described above have been willful, and therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

118. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NYLL – Unpaid Minimum Wages

**(As to all Defendants)**

119.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

120.     By failing to pay Plaintiff at least the minimum wage for all hours worked, Defendants have violated and continued to violate the NYLL.

121.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff for all hours worked at, at least the minimum hourly wage.

122.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1), *et seq.*

### THIRD CAUSE OF ACTION
**FLSA – Record Keeping Violations**
**(As to all Defendants)**

123.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

124.     Pursuant to the FLSA, Defendants are required to keep and maintain employee payroll records reflecting, *inter alia*, the hours worked and pay received by each employee, for at least three years, and records on which employee wage computations are based for at least two years.

125.     Defendants failed to maintain complete and accurate records of, *inter alia*, the hours worked and pay received by Plaintiff.

126.     As such, Defendants are in violation of the FLSA's record keeping requirements.

### FOURTH CAUSE OF ACTION
**NYLL – Record Keeping Violations**
**(As to all Defendants)**

127.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

128.     At all times relevant to this action, Defendants were and are required to establish, maintain and preserve for not less than six years, weekly payroll records that show for each employee, among other information, true and accurate payroll records and the number of hours worked daily and weekly, including the time of arrival and departure of each employee.  NYLL § 195(4); 12 N.Y.C.R.R. § 142-2.6.

129.     Defendants violated the applicable NYLL and NYCRR provisions by not maintaining and preserving Plaintiff's time of arrival and departure.

### FIFTH CAUSE OF ACTION
**NYLL – Wage Theft Prevention Act Notice Violations**
**(As to all Defendants)**

130.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

131.     Defendants violated NYLL § 195(1) by failing to furnish Plaintiff at the time of hiring and on or before February 1st of each subsequent year of employment (when applicable), with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designed by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office of principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

132.     Due to Defendants' violations of NYLL§ 195(1), Plaintiff is entitled to statutory penalties of $50.00 for each workday that Defendants failed to provide wage notices, up to

a maximum of $5,000, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided by NYLL§ 198(1-b).

133.     Defendants violated NYLL § 195(3) by failing to furnish Plaintiff with each payment of wages and accurate statement listing the dates of work covered by that payment or wages; name of employee; name of employer; address and phone number of employer; rate of rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages, deductions, allowances, if any, claimed as part of the minimum wage; and net wages.

134.     Through their failure to provide Plaintiff with wage statements as required by the NYLL, Defendants have violated NYLL § 190, *et seq*. and the supporting New York State Department of Labor Regulations.

135.     Due to Defendants' violation of NYLL§195(3), Plaintiff is entitled to statutory penalties of $250.00 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of $5,000, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

**SIXTH CAUSE OF ACTION**
**FLSA – Retaliation**
**(As to all Defendants)**

136.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

137.     Plaintiff was an employee of Defendants within the meaning of the FLSA.

138.     Defendants were employers of Plaintiff within the meaning of the FLSA.

139.     29 U.S.C. § 215(a)(3) prohibits any person, "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee."

140.     While employed by Defendants, Plaintiff complained to Defendants about Defendants' unlawful pay practices, including Defendants' failure to pay her the minimum wage for all hours worked, to pay her timely, to pay her in full, and Defendants' unlawful deduction of her wages.

141.     Plaintiff's complaints constitute protected activity under the FLSA.

142.     After and as a result of Plaintiff's complaints, she was terminated from working at Defendant BELMONT.

143.     A causal connection exists between Plaintiff's complaints of Defendants' unlawful pay practices and Plaintiff's termination as well as Defendants' refusal to provide Plaintiff with medical care as a patient at Defendant BELMONT.

144.     Defendants violated 29 U.S.C. § 215(a)(3) by, *inter alia*, by intentionally paying Plaintiff late, terminating Plaintiff, and refusing Plaintiff medical care as a patient at Defendant BELMONT in retaliation for her complaints of Defendants' unlawful pay practices.

145.     Due to Defendants' violations of 29 U.S.C. § 215(a)(3), Plaintiff is entitled to recover her lost wages and other compensatory damages, liquidated damages in an amount equal to her lost wages, pre-judgment and post-judgment interest, along with reasonable attorneys' fees, costs and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
### NYLL – Retaliation
### (As to all Defendants)

146. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

147. Plaintiff was an employee of Defendants within the meaning of the NYLL.

148. Defendants are employers of Plaintiff within the meaning of the NYLL.

149. NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of agent of any corporation, partnership, or limited liability company…shall discharge, threaten, penalize or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…or his or her authorized representative…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter…[or] (iii) because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter…or (v) because such employee has otherwise exercised rights protected under this chapter…"

150. While employed by the Defendants, Plaintiff complained to the Defendants about Defendants' unlawful pay practices, policies and procedures of not being paid proper wages, including Defendants' failure to pay Plaintiff the minimum wage for all hours worked, to pay her timely and in full, and Defendants' unlawful deduction of her wages.

151. Plaintiff's complaints to Defendants constitute protected activity under NYLL § 215.

152.     A causal connection exists between Plaintiff's complaints of improper pay practices and her termination as well as Defendants' refusal to provide Plaintiff with medical care as a patient at Defendant BELMONT.

153.     Defendants violated NYLL § 215 by intentionally paying Plaintiff late, terminating Plaintiff, and refusing Plaintiff medical care as a patient at Defendant BELMONT in retaliation for her complaints about Defendants' unlawful pay practices, policies and procedures, including Defendants' failure to pay her the minimum wage for all hours worked, to pay her timely, and Defendants' unlawful deduction of her wages.

154.     Due to Defendants' violations NYLL § 215, Plaintiff is entitled to recover her lost wages and other compensatory damages, liquidated damages, pre-judgment and post-judgment interest, along with reasonable attorneys' fees, costs and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**Title VII- Sex/Gender Based Discrimination**
**(As to the Corporate Defendant BELMONT)**

155.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

156.     Pursuant to 42 USCS § 2000e-2(a)(1), it shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex.

157.     Pursuant to 42 USCS § 20003 (m), an unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for an employment practice, even though other factors also motivated the practice.

158.     Defendant BELMONT, through their agents and employees, unlawfully discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment, and unlawfully terminated Plaintiff because of her sex.

159.     As the direct and proximate result of Defendant BELMONT's unlawful employment practices, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### NINTH CAUSE OF ACTION
### NYSHRL- Sex/Gender Based Discrimination
### (As to all Defendants)

160.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

161.     By the actions described above, among others, Defendants have discriminated against Plaintiff because of her gender/ sex in violation of the NYSHRL.

162.     As a direct and proximate result of Defendants unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### TENTH CAUSE OF ACTION
### NYCHRL- Sex/Gender Based Discrimination
### (As to all Defendants)

163.     Plaintiff hereby repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

164.     The NYCHRL provides that, "It shall be an unlawful discriminatory practice: "(a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, sexual orientation…"

165.     Defendants engaged in an unlawful discriminatory practice in violation of the NYCHRL creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of her gender.

166.     That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

**ELEVENTH CAUSE OF ACTION**
**Title VII- Sex/Gender Based Hostile Work Environment**
**(As to the Corporate Defendant BELMONT)**

167.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

168.     Plaintiff repeats, realleges, and restates each and every paragraph above as is said paragraphs were more fully set forth herein at length Pursuant to Section 2000e-2(a), it shall be an unlawful employment practice for an employer – (1) to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex.

169.     The Supreme Court has held that Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to later the conditions of the victim's employment and create an abusive working environment.

170.     Defendant BELMONT, through their agents and employees, unlawfully subjected Plaintiff to hostile work environment.

171.     As a direct and proximate result of the Defendant BELMONT's unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## TWELFTH CAUSE OF ACTION
### NYSHRL- Sex/Gender Based Hostile Work Environment
### (As to all Defendants)

172.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

173.     Pursuant to the NYSHRL, a Plaintiff can establish a hostile work environment claim if she can show that she was treated less well than other employees because of her protected class.

174.     Plaintiff was treated less well by the Defendants because of her gender/sex.

175.     As a direct and proximate result of Defendants unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## THIRTEENTH CAUSE OF ACTION
### NYCHRL- Sex/Gender Based Hostile Work Environment
### (As to all Defendants)

176.     Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

177.     By engaging in the foregoing conduct, Defendants violated Plaintiff's rights under the NYCHRL by subjecting Plaintiff to an offensive and hostile work environment because of her gender / sex.

178.     Plaintiff was treated less well because of her gender / sex.

179.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## FOURTEENTH CAUSE OF ACTION
### Title VII- Retaliation
### (As to the Corporate Defendant BELMONT)

180.    Plaintiff repeats, realleges, and restates each and every paragraph as if said paragraphs were more fully set forth herein at length.

181.    Pursuant to Section 2000e-3(a), it shall be an unlawful employment practice for an employer to discriminate against any individual, because she opposed any practice made an unlawful employment practice under Title VII.

182.    By the actions described above, among others, Defendant BELMONT, through their agents and employees, unlawfully retaliated against Plaintiff for engaging in protected activity, *inter alia*, when she opposed not only Defendant BELMONT's unlawful pay practices but also Defendant BELMONT's choice to discriminatorily pay the male Porter, Jason, more money for less hours when he covered Plaintiff's duties, by refusing to remediate the discrimination and harassment of which she complained (including Defendants' unlawful pay practices), by intentionally paying Plaintiff late, terminating her employment, and thereafter refusing to provide Plaintiff with medical care as a patient at Defendant BELMONT in violation of Title VII.

183.    As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## FIFTEENTH CAUSE OF ACTION
### NYSHRL- Retaliation
### (As to all Defendants)

184.    Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

185.     By the actions described above, among others, Defendant BELMONT, through

their agents and employees, unlawfully retaliated against Plaintiff for engaging in

protected activity, *inter alia*,  when she opposed not only Defendant BELMONT's

unlawful pay practices but also Defendant BELMONT's choice to discriminatorily pay

the male Porter, Jason,  more money for less hours when he covered Plaintiff's duties, by

refusing to remediate the discrimination and harassment of which she complained

(including Defendants' unlawful pay practices), by intentionally paying Plaintiff late,

terminating her employment, and thereafter refusing to provide Plaintiff with medical

care as a patient at Defendant BELMONT in violation of NYSHRL.

186.     As a direct and proximate result of Defendants' unlawful and discriminatory

conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an

award of monetary damages and other relief.

## SIXTEENTH CAUSE OF ACTION
### NYCHRL- Retaliation
### (As to all Defendants)

187.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the

preceding paragraphs as if fully set forth herein.

188.     The NYCHRL provides that it shall be an unlawful retaliatory practice: "For an

employer… to discharge… or otherwise discriminate against any person because such

person has opposed any practices forbidden under this chapter…"

189.     By the actions described above, among others, Defendant BELMONT, through

their agents and employees, unlawfully retaliated against Plaintiff for engaging in

protected activity, *inter alia*,  when she opposed not only Defendant BELMONT's

unlawful pay practices but also Defendant BELMONT's choice to discriminatorily pay

the male Porter, Jason, more money for less hours when he covered Plaintiff's duties, by refusing to remediate the discrimination and harassment of which she complained (including Defendants' unlawful pay practices), by intentionally paying Plaintiff late, terminating her employment, and thereafter refusing to provide Plaintiff with medical care as a patient at Defendant BELMONT in violation of NYCHRL.

190.    That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A.  A declaratory judgment that the practices complained of herein are unlawful under applicable state and federal law;

B.  Declaring that Defendants violated the minimum wage provisions of the FLSA, NYLL and supporting New York State Department of Labor Regulations;

C.  Declaring that Defendants violated the notice provisions of the NYLL and Wage Theft Prevention Act;

D.  Enjoining future violations of the FLSA and NYLL by Defendants;

E.  Declaring that Defendants' violations of the FLSA and NYLL were willful;

F.  Awarding Plaintiff unpaid minimum wages;

G.  Awarding Plaintiff statutory penalties for Defendants failure to furnish wage notices and/or wage statements pursuant to the NYLL.

H.  Awarding Plaintiff liquidated and/or punitive damages in amount equal to the total amount of wages found to be due, pursuant to the FLSA and NYLL;

I.  Awarding damages to the Plaintiff, retroactive to the date of her termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

J.  Declaring that Defendants retaliated against Plaintiff by, *inter alia*, terminating her and/or refusing to provide her with medical care due to her complaints of, and opposition to, Defendants' discriminatory treatment of her, unlawful pay practices,

policies and procedures, and awarding Plaintiff a recovery for compensatory and liquidated/punitive damages sustained;

K. Finding that the Defendants violated Title VII, NYSHRL, and NYCHRL by discriminating against Plaintiff because of her sex/gender;

L. Awarding Plaintiff lost wages, retroactive to the date of her termination, due to Defendants' sex/gender discrimination;

M. Awarding Plaintiff emotional distress damages due to Defendants' sex/gender discrimination.

N. Awarding Plaintiff punitive damages;

O. Awarding costs and expenses of this action together with reasonable attorneys' fees;

P. Awarding prejudgment and post-judgment interest;

Q. Awarding such other and further relief as the Court deems just and proper.

Dated: September 23, 2024
New York, New York

Respectfully submitted,

**Akin & Salaman PLLC**

*/s/ Kayla S. Callahan*
_____
Kayla S. Callahan, Esq.
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
kayla@akinlaws.com

*Counsel for Plaintiff*